# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Capital Ventures International, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. 11-cv-11937-DJC<br>) |
| v. | ) Oral Argument Requested<br>) |
| UBS Securities LLC; UBS Real Estate Securities, Inc.; and Mortgage Asset Securitization Transactions, Inc., | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**CAPITAL VENTURES' REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR AN ORDER SETTING A SCHEDULE FOR AN EARLY DETERMINATION OF SAMPLING ISSUES**

**PRELIMINARY STATEMENT**

This case involves false statements made about securities backed by many thousands of loans. Capital Ventures' current motion (Dkt. No. 50) seeks the same relief many other courts have granted—the opportunity to get Court guidance on whether a review of a sample of loans will be admissible evidence, versus having to present 8,000 different loans to the jury. Without such guidance, everyone's time would be wasted with needless discovery on far more loans than Capital Ventures believes to be reasonably necessary. UBS proffers no persuasive reason why this Court should break with precedent, forgoing the opportunity to meaningfully narrow the scope of discovery for the benefit of all involved—including for the benefit of the Court and the third parties that hold the 8,000 underlying "loan files."

**ARGUMENT**

**I.   ADJUDICATING THE SAMPLING ISSUE FOLLOWING THE SERVICE OF AN "EARLY" EXPERT REPORT WILL GREATLY NARROW DISCOVERY**

Because RMBS are backed by so many individual mortgage loans, failing to allow for proof-by-sampling in RMBS cases would mean costs would skyrocket. And failing to obtain early Court guidance on the issue of sampling would have similar effect. *See* CV Memo. (Dkt. No. 51) at 6-7. Not knowing how the Court will view the issue of sampling until after the close of discovery, Capital Ventures may be forced to take discovery on far more loans than it thinks necessary, with each "just in case the Court later disagrees" loan representing a waste of resources. Because so many loans are at issue, and the costs of obtaining and analyzing each loan are so high, the wasted costs would quickly reach into the many millions of dollars.

UBS suggests that the waste created by delaying considering of the sampling issue should be ignored because it is Capital Ventures' resources being wasted. *See* UBS Opp. (Dkt. No. 52)

1

at 5. Such a position is cynical at best, and unsupported by the lone case UBS cites.[1] Just as importantly, UBS's focus on the harm to Capital Ventures ignores the collateral damage caused to many others. Third parties (such as those that hold the "loan files") will also be burdened with broader subpoenas, witness' time will be wasted covering an unnecessarily large number of loans, the Court will be burdened with more discovery battles and unnecessarily large expert reports, and the jury will have its time wasted with evidence on far more loans than it would otherwise need to reach a valid conclusion.

## II. UBS WILL BE WELL-EQUIPPED TO CHALLENGE CAPITAL VENTURES' EXPERT REPORT ONCE IT IS SERVED UNDER THE PROCESS REQUESTED BY CAPITAL VENTURES' MOTION

UBS begins by observing that expert discovery traditionally follows fact discovery. *See* UBS Opp. at 2-3. But it does not dispute that this Court is nonetheless empowered to provide a different path forward here. Instead, UBS proffers three distinct, but related, observations about expert sampling reports in general. None justify denying the narrow relief Capital Ventures seeks here.

First, UBS observes that the sampling methodology is "not-yet-identified." *See id.* at 1. But the pending motion is clear that Capital Ventures will provide a specific expert report before UBS or the Court are asked to weigh the merits of sampling in this case. *See* CV Memo. at 2, 4. Under the proposed process, there will be no element of surprise, or lack of information, either on the part of UBS or the Court.

Second, UBS argues that Capital Ventures lacks sufficient information to create a valid expert report. *See* UBS Opp. at 3. The courts cited in the opening memorandum disagree, as

---

[1] *Hinterberger v. Catholic Health Systems* dealt with a motion to compel after "anemic" document productions by a plaintiff. 284 F.R.D. 94, 106 (W.D.N.Y. 2012). It thus has nothing to do with the propriety of having early *Daubert* challenges heard on a sampling expert's formal report.

they recognize that the only thing required to determine the admissibility of an RMBS plaintiff's sampling methodology is a review of "loan tapes" describing the basic features of the loans.  *See* CV Memo. at 9.  Those tapes have already been produced by UBS in this case.  Further, under the proposed process UBS will be free to point out purported deficiencies in Capital Ventures' report by way of its *Daubert* objections.  Anticipating that objections will be filed is no reason to delay consideration of those objections.

Finally, UBS vaguely references the risk that discovery will later reveal something that would alter the Court's views on sampling.  *See* UBS Opp. at 3-5.  But statistical sampling by its nature is designed to allow one to draw valid conclusions despite variations across the population.  Thus, that it may turn out that one loan has different "loan characteristics" (*id.* at 4) does not mean that every "different" loan will have to be gathered and re-underwritten.  Taken to its logical conclusion, *no* sampling could be done here, a position at odds with the case law and so nonsensible that UBS does not even explicitly suggest it.  The chances of discovery uncovering something that negates a statistical expert's conclusions drawn from the detailed loan tapes already produced are thus slim to none.  In any event, if discovery does (surprisingly) reveal currently unknown facts that fundamentally alter the nature of this case from a sampling perspective, UBS would then appear to have good grounds to move re-open this issue.  But that vaguely described remote possibility should not entitle UBS to withhold *all* objections until after the close of discovery, even those currently identifiable to it.  The costs associated with the remote risk of having to deal with truly new facts are far outweighed by the guaranteed waste that would be created by refusing to provide Court guidance before discovery closes.

### III. COURTS RECOGNIZE THAT THE RELIEF CAPITAL VENTURES SEEKS IS APPROPRIATE

As discussed in the initial memorandum, the courts in *MassMutual* and *FHFA* recognized that the "early vetting" of an RMBS plaintiff's sampling methodology is the best way forward in cases just like this. *See* CV Memo. at 7-8. Cognizant of that fact, the only purported distinction UBS can muster is that the *MassMutual* and *FHFA* decisions "govern numerous cases that are orders of magnitude more complex" than this one. *See* UBS Opp. at 5-6. That the courts dealt with more loans says nothing of the soundness of their conclusions that (a) sampling expert issues are ripe for *Daubert* objections even before the close of RMBS discovery, despite arguments such as those asserted above, and (b) very important efficiency gains can be had by providing Court guidance on the issue of sampling "early." And UBS does not and cannot argue that it is reasonable to expect Capital Ventures to prove its case by re-underwriting 8,000 different mortgage loans. Indeed, that this is a smaller case only magnifies the unfairness to Capital Ventures of forcing it to waste resources with unnecessary discovery.

The other decisions that UBS discusses only further confirm that Capital Ventures' motion should be granted. In *MBIA Insurance Corp. v. Countrywide Home Loans, Inc.*, the court granted plaintiff's motion *in limine* for approval of a sampling report prepared by Dr. Charles Cowan. 2010 WL 5186702, at *1 (N.Y. Sup. Ct. Dec. 22, 2010). While the court noted that plaintiff's methodology was not "without flaw or unsusceptible to challenge," that was because challenges to the weight, rather than acceptability, of the sample were reserved for the trier of fact. *Id*. at *1-6. That outcome is consistent with the relief that Capital Ventures seeks here: a determination of the sample's admissibility, not its ultimate weight.

Finally, in *Assured Guaranty v. DB Structured Products*, the court deemed plaintiff's sampling motion premature because it was based only on a "hypothetical method of statistical

4

sampling," not a detailed expert report identifying the sample and the methodology behind it. No. 650705/2010 (N.Y. Sup. Ct. Sept. 12, 2011). Despite the obviousness of the court's reasoning, UBS claims that the court instead denied the motion because it was "concerned that the defendant and the court would be presented with an expert report concerning loans that had yet to be re-underwritten." UBS Opp. at 4 n.2. But the plaintiff did not even propose submitting an expert report, and thus the court was not concerned with expert reports at all.[2]

**Conclusion**

For all the reasons set forth above, and in Capital Ventures' motion and documents in support thereof, Capital Ventures respectfully requests that the Court grant Capital Ventures' Motion for an Early Determination of Sampling Issues.

DATED: Los Angeles, California  
April 19, 2013

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ Chris R. Barker  
Jeremy Andersen (*pro hac vice*)  
Chris R. Barker (*pro hac vice*)  
865 South Figueroa Street, 10th Floor  
Los Angeles, California 90017  
Telephone: 213-443-3000  
Fax: 213-443-3100  
jeremyandersen@quinnemanuel.com  
chrisbarker@quinnemanuel.com

Daniel L. Brockett (*pro hac vice*)  
David D. Burnett (*pro hac vice*)  
51 Madison Avenue, 22nd Floor  
New York, New York 10010  
Telephone: 212-849-7000

---

[2] The only support UBS provides for its assertion otherwise is that the court also ordered the plaintiff to respond to discovery demands asking for identification of the allegedly breaching loans. But this order—set forth under its own numerical heading—was separate and entirely distinct from the court's ruling on the sampling issue.

5

Fax:  212-849-7100
danbrockett@quinnemanuel.com
daveburnett@quinnemanuel.com

Michael J. Pineault (BBO # 555314)
CLEMENTS & PINEAULT LLP
24 Federal Street
Boston, Massachusetts 02110
Telephone:  857-445-0133
Fax:  857-366-5404
mpineault@clementspineault.com

*Attorneys for Plaintiff Capital Ventures International*

## **CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on April 19, 2013.

                                            /s/ Chris R. Barker