**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| CAPITAL VENTURES INTERNATIONAL, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) ) | |
| UBS SECURITIES LLC, UBS REAL ESTATE SECURITIES, INC., and MORTGAGE ASSET SECURITIZATION TRANSACTIONS, INC., | ) ) ) ) ) ) | Civil Action No. 11-11937-DJC |
| Defendants. | ) ) ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                             **July 22, 2013**

**I.     Introduction**

Plaintiff Capital Ventures International ("Capital Ventures") purchased residential mortgage-backed security ("RMBS") pass-through certificates (the "Certificates") from UBS Securities LLC ("UBS") between 2004 and 2006. Capital Ventures brings this action against UBS, UBS Real Estate Securities, Inc. ("UBS Real Estate") and Mortgage Asset Securitization Transactions, Inc. ("MASTR") (collectively, the "Defendants") alleging violations of sections 410(a) and (b) of the Massachusetts Uniform Securities Act ("MUSA") arising from material misstatements or omissions regarding the credit quality of the Certificates in registration statements, prospectuses, prospectus supplements and term sheets (the "Offering Materials"). In the September 28, 2012 Memorandum and Order resolving the Defendants' motion to dismiss,

1

the Court dismissed Capital Ventures's section 410(a) and (b) claims against UBS Real Estate and MASTR and denied the Defendants' motion to dismiss the claims regarding underwriting guidelines, owner-occupancy rates, appraisals and loan-to-value ("LTV") ratios. D. 25. The Court also granted Capital Ventures leave to amend its pleading as to the credit rating claim. Capital Ventures subsequently filed an amended complaint that included a re-pleading of the credit rating claim. D. 28. Pursuant to Fed. R. Civ. P. 12(b)(6), UBS has moved to dismiss the credit ratings claim as now alleged in the amended complaint. D. 38. For the reasons set forth below, UBS's motion to dismiss is DENIED.

## II.     Factual Allegations and Procedural History[1]

Capital Ventures purchased over $109 million of Certificates that were issued in six RMBS offerings between 2004 and 2006 from UBS. ¶¶ 3, 9. UBS Securities served as underwriter for all six of the offerings at issue and was the entity from whom Capital Ventures purchased the Certificates. ¶ 9. The Certificates represent interests in a pool of mortgage loans. ¶ 23. The collateral pool for each securitization usually contained thousands of mortgage loans. ¶ 30. Information about those mortgages was included in the "loan files" that the mortgage originators developed while making the loans. ¶ 28. Investors, like Capital Ventures, were not given access to the loan files and had to rely upon the representations in the Offering Materials about the quality and nature of the loans that formed the security for their Certificates. ¶ 31.

The Offering Materials reported ratings for each tranche (or class) of the Certificates that were based on the analyses conducted by the credit rating agencies (the "Rating Agencies"). ¶ 60. Each tranche of the Certificates received a credit rating indicating the Rating Agencies' view of its risk profile. ¶ 60. The Offering Materials represented that in arriving at the given ratings, the rating agencies conducted an analysis "designed to assess the likelihood of

---

[1] All paragraph references are to the amended complaint, D. 28.

delinquencies and defaults in the supporting mortgage pools." ¶ 61. For example, the Offering Materials for AHMA 2006-2 represent: "The ratings on the certificates address the likelihood <u>that holders of the certificates</u> will receive all distributions on the mortgage loans to which they are entitled." ¶ 61 (quoting AHMA 2006-2 Prospectus Supplement) (emphasis in original). These Offering Materials also represent that: "The rating process addresses structural and legal aspects associated with the Offered Certificates, <u>including the nature of the underlying mortgage loans</u>." ¶ 61 (quoting AHMA 2006-2 Prospectus Supplement) (emphasis in original). All of Capital Ventures's Certificates have been downgraded to "junk-bond" ratings by at least one of the Rating Agencies, with all but one being rated as "junk" by both agencies that are currently providing ratings on that Certificate. ¶ 69.

Capital Ventures alleges UBS knew the ratings were based on false and misleading data such as owner-occupancy and LTV statistics and underwriting quality and thus knew that the ratings were not the product of a process designed to judge the risk presented by the Certificates (as represented in the Offering Materials), but rather reflect the Rating Agencies' judgment as to the risk presented by a "hypothetical security Capital Ventures was promised, but did not receive." ¶¶ 63, 186. Capital Ventures also alleges that UBS did not "genuinely believe in the credit ratings." ¶ 186.

Capital Ventures filed its initial complaint against the Defendants on November 1, 2011 alleging that the Offering Materials misstated or omitted certain material facts regarding underwriting standards and practices, owner-occupancy statistics, LTV ratios and the credit ratings process. Compl., D. 1, 16. The Defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). D. 13. On September 28, 2012, after a hearing on the motion, the Court issued a Memorandum and Order (the "September 28th Order") declining to dismiss

3

Capital Ventures's claims that the Offering Materials misrepresented information regarding underwriting guidelines, owner-occupancy rates, appraisals and LTV ratios and dismissing Capital Ventures's section 410(a) and (b) claims against UBS Real Estate and MASTR. Capital Ventures Int'l v. UBS Sec. LLC, No. 11-11937-DJC, 2012 WL 4469101, at *3–10, 14–15 (D. Mass. Sept. 28, 2012). The Court granted without prejudice the Defendants' motion as to Capital Ventures's credit ratings claim and granted the plaintiff leave to amend its pleading as to this claim to allege that the Defendants did not reasonably believe the ratings made by the ratings agencies. Id. at *12 & n.7. UBS has now moved to dismiss this claim as now pled in the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).

### III.    Standard of Review

In consideration of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). The Court will dismiss a claim that fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To state a plausible claim, a complaint need not contain detailed factual allegations, but it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555; see San Geronimo Caribe Project, Inc. v. Acevedo-Vila, 687 F.3d 465, 471 (1st Cir. 2012). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.

(quoting Twombly, 550 U.S. at 557) (alteration in original).  Dismissal for failure to state a claim is appropriate if the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)) (internal quotation marks omitted).  At bottom, a complaint must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

## IV. Discussion

Capital Ventures's claims arise under the MUSA, which imposes civil liability on any person who "offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading."  Mass. Gen. L. c. 110A, § 410(a)(2).  Section 410 of the MUSA is modeled after section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(a)(2), and courts have interpreted MUSA in conformity with the federal act.  Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 50–51 (2004); see Fenoglio v. Augat, Inc., 50 F. Supp. 2d 46, 59 (D. Mass. 1999), aff'd, 254 F.3d 368 (1st Cir. 2001).  Capital Ventures alleges that UBS is primarily liable under section 410(a)(2).  ¶ 187.

Capital Ventures alleges that the Offering Materials made actionable misrepresentations regarding the credit ratings for the Certificates.  In its original complaint, Capital Ventures did not allege that the ratings given were misreported, but rather that these ratings were false and misleading because they were based on "false and misleading data regarding, among other things, the property's occupancy status and value, and regarding the underwriting processes

applied to that loan." Compl., D. 16 ¶ 178. Therefore, UBS's representations regarding the credit ratings, including the representations concerning the process used to arrive at the purported credit ratings and the representations that the given ratings would reflect the Ratings Agencies' view of the Certificates, were false and misleading. Id.

"[R]atings are opinions purportedly expressing the agencies' professional judgment about the value and prospects of the certificates." Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 775 (1st Cir. 2011) (emphasis in original). An opinion may be misleading "if it does not represent the actual belief of the person expressing the opinion, lacks any basis or knowingly omits undisclosed facts tending seriously to undermine the accuracy of the statement," and "[l]iability may on this theory also extend to one who accurately described the opinion." Id. In Nomura, the First Circuit dismissed the plaintiffs' claims that the credit ratings were based on "inaccurate loan information," because "the complaint stop[ped] short of alleging expressly that the leadership of S & P or Moody's believed that their companies' ratings were false or were unsupported by models that generally captured the quality of the securities being rated." Id. In the September 28th Order, the Court held that "Capital Ventures has failed to plead a claim based on the theory that the credit rating agencies disbelieved their ratings." Capital Ventures, 2012 WL 4469101, at *11.

The Court also considered Capital Ventures's argument that "the Defendants could not reasonably have believed that the ratings were accurate because 'those involved in the [s]ecuritizations . . . fed garbage data to the agencies, an issue of fact well discernible to [the Defendants].'" Id. (alterations in original) (quoting Pl. Opp., D. 17 at 34). In holding that the claim as then pled failed to allege an actionable misrepresentation and omission and granting Capital Ventures leave to amend, the Court discussed the reasoning in In re Bear Stearns

Mortgage Pass-Through Certificates Litigation, 851 F. Supp. 2d 746 (S.D.N.Y. 2012). Capital Ventures, 2012 WL 4469101, at *11–12. The court in In re Bear Stearns concluded that the plaintiffs' argument that the "Defendants could not reasonably have believed that the ratings were accurate because 'the information Bear Stearns provided to the Rating Agencies regarding the loans underlying the pools at issue was faulty and inaccurate'" to "potentially [have] merit." 851 F. Supp. 2d at 771. The court concluded that the unqualified reproduction of the ratings in the offering documents would constitute an actionable misrepresentation and omission if "Bear Stearns knowingly fed incomplete or inaccurate information to the Rating Agencies, or discovered after the Agencies rated the Certificates that they did so based on defective loan data." Id. at 772. However, the "exact contours of this allegation [were] obscure" because the complaint was unclear as to what the faulty loan information consisted of and failed to allege at what stage the Rating Agencies rated the certificates and what information the Rating Agencies relied upon to arrive at those ratings. Id. at 771–72. Thus the court granted the plaintiffs leave to amend the complaint to plead facts demonstrating that Bear Stearns was aware, when it released the offering documents, that the certificates' ratings were based on inaccurate or incomplete information. Id. at 772. Pursuant to similar reasoning, the Court granted Capital Ventures "leave to amend its complaint as to its claim regarding the credit rating to make clear that the Defendants did not reasonably believe the ratings made by the ratings agencies based upon information such as the LTV ratios and owner-occupancy statistics." Capital Ventures, 2012 WL 4469101, at *12 n.7.

UBS challenges the Court's reliance on In re Bear Stearns as a basis for allowing Capital Ventures's credit ratings claim to stand. UBS asserts that the First Circuit's ruling in Nomura stands for the proposition that ratings are non-actionable third-party opinions and claims

7

predicated on credit ratings must be dismissed unless the plaintiff alleges that the rating agency disbelieved its opinion. D. 39 at 6, 8; D. 48 at 6–8. However, Nomura allows for liability based on third-party opinions in circumstances beyond those where the person offering the opinion is alleged to disbelieve the opinion. An opinion is also an actionable misstatement if it "lacks any basis or knowingly omits undisclosed facts tending seriously to undermine the accuracy of the statement." Nomura, 632 F.3d at 775. For example, in Massachusetts Mutual Life Insurance Co. v. Residential Funding Co., LLC, 843 F. Supp. 2d 191 (D. Mass. 2012), the court considered whether allegations regarding appraisals, which are opinions, were sufficient to state a claim. Id. at 202–04. In so doing, the court rejected the defendants' arguments that the plaintiff's allegations regarding appraisals were based on non-actionable opinions because an "opinion is also actionable if it has no basis in fact." Id. at 203–04. The court held that the plaintiffs made sufficient allegations to plead an actionable opinion because, although they did "not ple[a]d that the appraisers did not believe their appraisals at the time they were given, such an allegation is not necessary to state a claim under section 410(a)." Id. at 203. Because an opinion is also actionable if it has no basis in fact, the plaintiff's allegations that "Defendants knew that the appraisals . . . 'bore no relationship to the actual data and characteristics of the properties' and knew that they were 'not justified, unreasonable and inaccurate' [were] sufficient to make the statements of opinion actionable." Id. at 204.

Moreover, Nomura does not appear to address the particular scenario at issue here. Here, Capital Ventures alleges that UBS knew that the LTV, owner-occupancy and other data on the loans given to the Rating Agencies did not reasonably relate to the true nature of the loans being securitized, knew that the ratings included in the Offering Materials were based on faulty data and thus did not genuinely believe in the ratings. ¶ 186. Another court in this district has

considered similar allegations and similarly found In re Bear Stearns to be persuasive and Nomura to be distinguishable. See Capital Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp., No. 12-10085-RWZ, 2013 WL 535320, at *5–6 (D. Mass. Feb. 13, 2013). In J.P. Morgan, the court considered allegations that the "defendants knew that the underlying data was faulty and so that there was no real basis for the credit ratings" and that the "defendants did not subjectively believe the ratings." Id. at *6. The court acknowledged that the plaintiffs' claims in Nomura "focused on the knowledge and subjective belief of the ratings agencies" and that their claims failed "because they did not allege that the ratings agencies knew the data was faulty or disbelieved the ratings." Id. However, the court found Nomura to be distinguishable because "[h]ere, by contrast, [the plaintiff's] claim focuses on the knowledge and belief of the sponsors, depositors, and underwriters who put out the offering materials." Id. Accordingly, the court held that the plaintiff's allegations "state a claim because . . . defendants cannot simply repeat opinions they know are inaccurate or baseless and then disclaim liability." Id. (citing In re Bear Stearns, 851 F. Supp. 2d at 772). For all these reasons, the Court continues to find the analysis in In re Bear Stearns persuasive.

As in J.P. Morgan, Capital Ventures has adequately alleged that UBS knew that the data underlying the credit ratings was faulty and did not relate to the Certificates and thus UBS did not subjectively believe the ratings that were published in the Offering Materials. Capital Ventures has amended its complaint to allege the many stages at which inaccurate data entered the ratings process. ¶¶ 178–86. The amended complaint recounts a chronology from the pre-bid investigation period through the final rating stages during which securitizers, including UBS, allegedly supplied inaccurate loan information to the Rating Agencies. See ¶¶ 178 (prior to bidding on loans in a loan auction, securitizers would submit the purported loan features

9

(contained on a loan tape) to the Rating Agencies that would then run the loan-level information through their models to estimate the number of loans that were likely to default and that by combining the predictions of loan defaults with the proposed "waterfall" structure of the various tranches, a rating could be assigned), 179 (loan information was also given to the Rating Agencies in advance of the finalization of the transaction to procure "shadow" ratings); 180 (loan information was also provided to the Rating Agencies to obtain final for-publication ratings); 184 (UBS supplied false information regarding the loans to the Rating Agencies in the "pre-purchase, shadow-rating, and final-rating stages (and any steps in between)").

The ratings were based on the output from the Rating Agencies' quantitative models. ¶ 180. The input to the models was loan-level information including LTV ratios and occupancy status that was used to create the Offering Materials. ¶¶ 63, 178, 180–81, 184–85. The Court has already held that Capital Ventures has alleged sufficient factual matter to support its allegations that UBS knew before publication that the occupancy statistics contained in the Offering Materials was inaccurate. See Capital Ventures, 2012 WL 4469101, at *7–8. Capital Ventures has also alleged that UBS knew the LTV ratios contained in the Offering Materials were false and misleading. ¶ 59. As previously discussed in the September 28th Order, Capital Ventures alleged that the appraisal process was routinely manipulated and, as a result, UBS used inflated appraisals and thus disclosed understated LTV ratios. ¶¶ 59, 93–94. In support of its allegations that the property values UBS used to calculate the LTV ratios were consistently inflated, Capital Ventures has alleged the "true" LTV ratios at the time of the securitizations as calculated by an automated valuation model ("AVM"). ¶¶ 90–95. The AVM, according to Capital Ventures, was based on data similar to that of in-person appraisals, including county assessor records, tax rolls, and data on comparable properties. ¶ 91. Capital Ventures also

alleges that based on UBS's involvement in the securitization process as the underwriter, it had a duty, in "accordance with industry standards" and its "legal obligations," to perform due diligence on the loan pool and the originators. ¶ 30. Thus, there are sufficient factual allegations to support an inference of knowledge on UBS's part because "knowledge may be inferred from surrounding circumstances." Mass. Mutual, 843 F. Supp. 2d at 204. Accordingly, the allegations regarding UBS's access to the underlying appraisal data, its duty to conduct due diligence and the results of the AVM, which diverge greatly from the appraisals underlying the LTVs contained in the Offering Materials, create a reasonable inference that the LTV ratios were knowingly understated. Id.

Thus, the false data that was given to investors with respect to the Certificates is also alleged to have been "used to produce the ratings that formed the basis for the rating-related representations in the Offering Materials." ¶¶ 184–85. Accordingly, the inclusion of the ratings in the Offering Materials constitutes an actionable misrepresentation and omission. See J. P. Morgan, 2013 WL 535320, at *6 & n.7 (holding that allegations that "the defendants knew that the underlying data was faulty and so that there was no real basis for the credit ratings" and implicit allegations that the "defendants subjectively disbelieved the credit ratings" state a claim because "defendants cannot simply repeat opinions they know are inaccurate or baseless and then disclaim liability").

The Court now turns briefly to the allegation that the credit ratings representations were actionably false because UBS made factual representations as to the processes that would be followed to calculate the ratings. Capital Ventures alleges that UBS represented that the credit ratings were based on accurate data about the loans underlying the Certificates, while knowing that the data that had been supplied to the Rating Agencies did not reflect the true nature of the

11

loans. ¶¶ 61 (alleging that "the Offering Materials represent that, in arriving at the given ratings, the rating agencies conducted an analysis designed to assess the likelihood of delinquencies and defaults in the supporting mortgage pools"), 63 (alleging that "Defendants represented that the provided ratings would reflect the judgment of the rating agencies as applied to the factual aspects of the Mortgage Loans and Certificates that would be actually delivered to investors. This was false and misleading. The rating agencies based their ratings on the same false and misleading data discussed herein — such as the baseless owner-occupancy and LTV statistics, and false representations regarding underwriting quality"). Capital Ventures also states a claim on this theory because a representation that a certain process will be used is an actionable statement of fact. See J. P. Morgan, 2013 WL 535320, at * 6 (holding that "Defendants' representations about the process by which credit ratings are generated may be actionable even if the opinion expressed by the rating is not").

**V.      Conclusion**

For the foregoing reasons, UBS's motion to dismiss is DENIED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge